UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

RYAN FRANKE     Plaintiff

v.     Civil Action No. 3:23-cv-119-RGJ-RSE

KENNY JANES     Defendant

\* \* \* \* \*

## MEMORANDUM OPINION & ORDER

Plaintiff Ryan Franke ("Franke") claims that Defendant Kenny Janes ("Janes"), an officer with the Hillview Police Department, used excessive force while detaining him. [DE 1 at 1]. Janes moves for summary judgment. [DE 26]. Franke responded [DE 32] and Janes replied [DE 34]. For the following reasons, Janes's motion [DE 26] is **GRANTED**. Because summary judgment is granted and this matter will be dismissed, all remaining motions of record are **DENIED as moot**.

## I. BACKGROUND

On March 12, 2022, Janes and other officers were called to the Hillview Community Center for a "fight" involving "numerous subjects." [DE 26-4]. Franke admits he was personally involved in two incidents there. The first was an altercation with his ex-wife, Samantha Gardner ("Gardner"), inside the community center. [DE 26-2 at 94–95]. The second was a fight with an unidentified man "laughing at the situation" outside. [*Id.* at 95–96].

Janes wore a bodycam on the evening in question. [DE 28]. The footage is stamped in Zulu time. At this stage, the Court accepts "the facts as depicted by the recording" but still "construe[s] any remaining 'gaps or uncertainties' in the footage . . . in the light most favorable to" Franke. *See Jones v. Naert*, 121 F.4th 558, 562 n.1 (6th Cir. 2024) (quoting *Heeter v. Bowers*, 99 F.4th 900, 910, 912 (6th Cir. 2024)); *see also Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

### A. Officers' Arrival

When Janes arrived at the community center, people were scattered around the parking lot. [DE 28 at 23:17:51]. A woman told him that someone was retrieving video footage. [*Id.* at 23:18:07]. Franke was driving away until officers arrived. [DE 26-2 at 96–97]. As Janes approached, Franke was speaking through his car's open window with an officer and other individuals in the parking lot. Franke remarked, "He tackled me and I fucking beat the shit out of him," then re-parked and exited his car. [DE 28 at 23:18:22]. Meanwhile, a bystander told Janes that the man who "attacked" Franke had already left the scene. [*Id.* at 23:18:24].

Gardner approached Janes and asked to speak privately. [*Id.* at 23:18:53]. From her, Janes learned that Franke had been involved in two separate incidents. First, Franke and Gardner had an altercation inside the community center after their daughter's basketball game. [*Id.* at 23:19:02, 23:19:26]. According to Gardner, Franke told her to "shut the fuck up" and threatened to "knock your teeth out your throat." [*Id.* at 23:19:14]. It was Gardner's weekend with custody, but when she tried to leave, Franke "would not give me my daughter. He walked off with her." [*Id.* at 23:19:25]. As their respective families got involved, Franke continued threatening to knock Gardner down or knock her out. [*Id.* at 23:19:37]. Thereafter, Franke fought with another man in the parking lot. [*Id.* at 23:20:04].

When Gardner stated that Franke had "pushed" her, Janes pointed out a red mark on her neck. Gardner responded that the mark was probably caused by Franke's arm during their altercation inside the community center. [*Id.* at 23:19:47]. According to Gardner, Franke "knocked his arm into me and pushed me." [*Id.* at 23:20:19]. Gardner also alluded to prior domestic violence issues with Franke. [*Id.* at 23:20:29]. Another officer joined the conversation. When asked, Gardner confirmed that there were no protective or domestic violence orders in place between her and Franke. [*Id.* at 23:21:10]. But she also expressed intent to press charges for the mark on her

2

neck and again alluded to a history of domestic violence. [*Id.* at 23:21:24]. The second officer concluded that Franke's actions, as retold by Gardner, were "still DV" even though Franke and Gardner were no longer a couple. He instructed Janes to "detain" Franke. [*Id.* at 23:21:44].

### B. Detaining Franke

Janes approached Franke and cuffed him without struggle. When asked why, Janes responded, "for domestic violence." [DE 28 at 23:22:09]. Franke asked why Janes was "taking me to jail," and Franke's mother asked why Janes was "arresting my son." While Janes patted Franke down, another officer explained that Franke was only being "detained at this moment." [*Id.* at 23:22:20]. Once Franke was cuffed, Janes guided him towards Janes's cruiser. As they walked, Janes mentioned the mark on Gardner's neck. Franke paused, turned slightly towards his family, and yelled, "Hey! They're saying she's got marks on her neck! I didn't touch her neck!" [*Id.* at 23:23:14].

What happened next can be heard but only partially seen in the bodycam footage. When Franke paused and turned towards his family, Janes lifted Franke's left arm behind him, instructed him, "Let's go," and quickened their pace towards the cruiser. [*Id.* at 23:23:36]. Despite both men being generally out of frame, it is clear that there was some degree of physical separation between them when Janes attempted to move Franke onward to the cruiser. Franke said to Janes:

> Get off of me, quit doing that! That hurts. There's no reason to do that! I'm not doing nothing, you fucking bitch! No! You need to stop manhandling me like this! Hey, this guy's hurting me! This guy's hurting me! I'm not pulling away from anybody! I'm not pulling away from you and you're hurting me! Fuck you, dude. You're a pussy. Tyrant piece of shit!

[*Id.* at 23:23:42]. Simultaneously, Janes said to Franke:

> Stop. Stop. Well, then—stop pulling away from me! You need to calm down. Calm down. I'm not manhandling you, you're the one pulling from me! You're the one pulling away from me. You're the one pulling away from me. Let's go.

3

[*Id.*]. After the fact, Janes testified that because Franke "attempted to pull away . . . multiple times," he "used pain compliance to get [Franke] to continue to move forward." [DE 26-7 at 162–63]. Franke, on the other hand, testified that Janes put him in a "half nelson" and "shove[d] him forward," then grabbed his wrist and "torque[d] it" to press him against the cruiser. [DE 26-2 at 98]. Video shows that at the time they reached the cruiser, Janes only had one hand on Franke and the other he used to open the rear door. Janes then directed Franke to get inside the cruiser and he did so under his own power. [DE 28 at 23:24:04]. The time between Franke's pause to yell to his family and Janes opening the cruiser door was roughly 30 seconds, based on the video evidence. [*Id.* at 23:23:36].

Officers continued speaking with those on-scene and awaiting the footage of the altercation with Gardner inside the community center. [*Id.* at 23:35:45]. Meanwhile, Franke and Janes began what appears to be friendly conversation. Franke apologized several times to Janes, who understood why Franke had been so animated. [*Id.* at 23:28:20, 23:30:35, 00:23:48]. They also realized that they attended high school together. [*Id.* at 23:32:56, 23:35:45].

Franke complained repeatedly of wrist and shoulder pain. [*Id.* at 23:33:32, 23:41:33, 23:47:58, 00:08:15, 00:12:34]. He blamed the handcuffs, falling on a shoulder while fighting in the parking lot, and a history of other shoulder issues. [*Id.* at 23:41:33, 00:08:15, 00:24:26]. According to Franke's deposition, he also punched with his right hand during the parking lot fight. [DE 26-2 at 96–97]. Janes accommodated Franke first by adjusting the handcuffs [DE 28 at 23:33:32], then by re-cuffing him to allow for more shoulder movement and ensuring that he could fit a finger between the cuffs and Franke's wrists [*Id.* at 23:47:58]. Franke twice confirmed that he did not need medical attention. [*Id.* at 23:41:33, 00:08:15].

4

Other officers eventually reviewed the community center's camera footage, which satisfied them that Franke had not assaulted Gardner. [DE 26-6 at 145]. Searching records from his cruiser, Janes learned that Franke had not been charged with domestic violence in the past. [DE 28 at 23:41:58]. Ultimately, Franke was "criminally trespassed" from the community center but released without any charges. [*Id.* at 00:25:31]. He left with his family. [*Id.* at 00:35:40].

## II. STANDARD

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law[,]' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court may not weigh evidence or make credibility determinations but must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000).

"The burden of demonstrating the absence of a genuine dispute of material fact first rests with the moving party." *George v. Youngstown State Univ.*, 966 F.3d 446, 458 (6th Cir. 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "If the moving party meets this burden, the burden then shifts to the nonmoving party to establish a 'genuine issue' for trial via 'specific facts.'" *Id.* (quoting *Celotex*, 477 U.S. at 324). "The mere existence of a scintilla of evidence," *Liberty Lobby*, 477 U.S. at 252, or "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, will not defeat summary judgment. Instead, "the non-moving party must 'cit[e] to particular parts of materials in the record . . . or . . . show[] that the materials cited" by the

moving party "do not establish the absence . . . of a genuine dispute.'" *United Specialty Ins. v. Cole's Place, Inc.*, 936 F.3d 386, 403 (6th Cir. 2019) (quoting Fed. R. Civ. P. 56(c)(1)).

### III. ANALYSIS

Franke claims excessive force under 42 U.S.C. § 1983, as well as negligence and battery under Kentucky law. [DE 1 at 4–5]. He alleges that during the walk to the cruiser, Janes injured his right wrist, requiring surgery and physical therapy. [DE 26-2 at 104; DE 1 at 3]. Franke concedes that any shoulder injury on the day in question resulted from his fight in the community center parking lot, not Janes's actions. [DE 32 at 369; DE 26-2 at 105–06]. He also concedes that his wrist pain "did not appear to be caused by tight handcuffs" and disclaims any argument under the "'tight handcuffs' rule." [DE 32 at 369, 382]. Therefore, the crux of this case is whether Janes "violently twisted [Franke's] wrist without cause" as Franke argues.[1] [DE 32 at 382].

#### A. Excessive-Force Claim

It is undisputed that Janes acted under color of state law. To succeed on his Section 1983 claim, Franke must show that Janes violated his Fourth Amendment rights. *See Littler v. Ohio Ass'n of Pub. Sch. Emps.*, 88 F.4th 1176, 1180 (6th Cir. 2023); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989). "[R]easonableness is always the touchstone of Fourth Amendment analysis." *Cnty. of Los Angeles, Calif. v. Mendez*, 581 U.S. 420, 427 (2017) (quoting *Birchfield v. North Dakota,* 579 U.S. 438, 477 (2016)). "When an officer carries out a seizure that is reasonable, taking into account all relevant circumstances, there is no valid excessive force claim." *Id.* at 428. Inversely, when an officer uses excessive force, his actions are unreasonable. *LaPlante v. City of Battle Creek, Michigan*, 30 F.4th 572, 579 (6th Cir. 2022).

---

[1] In his Complaint, Franke alleged that "Janes purposefully caused significant injury to [his] wrist" by "violently and intentionally twist[ing] [his] hands and arms." [DE 1 at 1, 3]. In his response brief, Franke argues that Janes "violently twisted his wrist without cause." [DE 32 at 382].

The Supreme Court has "set[] forth a settled and exclusive framework for analyzing whether the force used in making a seizure complies with the Fourth Amendment." *Mendez*, 581 U.S. at 427 (citing *Graham*, 490 U.S. at 395). The framework is a "balancing approach" that "requires courts to weigh an officer's reasons for the force against an arrestee's interest in avoiding it." *Chaney-Snell v. Young*, 98 F.4th 699, 715–16 (6th Cir. 2024). The particular facts and circumstances of the case must be evaluated objectively; an officer's subjective intentions are immaterial. *Mendez*, 581 U.S. at 428; *Graham*, 490 U.S. at 397. Specific considerations "include[e] [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)). While this list is not exhaustive, *Roell v. Hamilton Cnty., Ohio*, 870 F.3d 471, 481 (6th Cir. 2017), neither Franke nor Janes asks the Court to consider any other circumstances here [*see* DE 32 at 377–80; DE 26-1 at 78–80].

Courts must "analyze these factors from the perspective of a reasonable officer who knows that the police must regularly make quick decisions about whether to use force," *Farris v. Oakland Cnty., Michigan*, 96 F.4th 956, 965 (6th Cir. 2024) (citing *Plumhoff v. Rickard*, 572 U.S. 765, 775 (2014)), rather than "with the 20/20 vision of hindsight," *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)). "The right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," and "not every push or shove . . . violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (cleaned up); *see also Chaney-Snell*, 98 F.4th at 718. However, "the police violate the Fourth Amendment if they use 'gratuitous' force on an arrestee who has surrendered and poses no threat." *Chaney-Snell*, 98 F.4th at 715 (collecting cases).

### 1. *Severity of the Crimes at Issue*

Under the first *Graham* factor, courts assess the suspect's apparent crimes and what a reasonable officer might infer from those crimes. *Roell*, 870 F.3d at 481. While the facts known to the officers at the scene are all that should be considered, *see LaPlante*, 30 F.4th at 580, an officer need not observe the commission of a felony before using some degree of force, *id.*; *see also Farris*, 96 F.4th at 965. In this case, officers responded to a "fight" call. Janes asserts that he suspected Franke "of the violent crime of assault." [DE 26-1 at 78]. Assault is a violent crime and therefore a potentially severe one. *See Vanderhoef v. Dixon*, 938 F.3d 271, 277 (6th Cir. 2019); *cf. Standifer v. City of Columbus*, 586 F. Supp. 3d 782, 785 (S.D. Ohio 2022). Even more so where the assault constitutes a felony. *Mullins v. Cyranek*, 805 F.3d 760, 766 (6th Cir. 2015); *see also Latits v. Phillips*, 878 F.3d 541, 550 (6th Cir. 2017). Under *Graham*, "the facts and circumstances of each particular case" must be considered. 490 U.S. at 396. Here, Janes heard Franke remark that he "fucking beat the shit out of" a man who tackled him. [DE 28 at 23:18:22]. Janes reasonably suspected Franke of an assault in the parking lot that was potentially severe or, at a minimum, involved some level of physical violence.

Janes also suspected Franke of domestic violence against Gardner, which he argues is a severe offense. [DE 26-1 at 78–79]. In response, Franke notes that the authorities supporting Janes's argument are unpublished [DE 32 at 377–78] and points to *Lee v. Tucker*, where the Tenth Circuit "decline[d] to hold . . . that all calls to police involving allegations of domestic violence entitle officers to respond with substantial force." 904 F.3d 1145, 1149 (2018). Within this circuit, courts have regarded domestic violence as a serious offense. *E.g. Spradlin v. Primm*, 581 F. Supp. 3d 837, 844 (E.D. Ky. 2022); *Mallin v. City of Eastlake*, 755 F. Supp. 2d 819, 836 (N.D. Ohio 2010); *see also Goodrich v. Everett*, 193 F. App'x 551, 555 (6th Cir. 2006). Here, Janes was told that Franke had threatened Gardner and struck her with his arm. [DE 28 at 23:19:14, 23:20:19].

He was also told by Gardner that Franke's alleged conduct fit a historical pattern of violence against Gardner. [*Id.* at 23:20:19, 23:21:08]. Based on the video evidence, Janes reasonably suspected Franke of domestic violence as well as assault. Weighing a reasonable "officer's reasons for the force against an arrestee's interest in avoiding it," this *Graham* factor weighs in Janes's favor. *See Chaney-Snell*, 98 F.4th at 715–16.

### 2. *Whether Franke Posed a Threat*

Under the second *Graham* factor, courts consider "whether the suspect pose[d] an immediate threat to the safety of the officers or others." *Graham*, 490 U.S. at 396; *see also Roell*, 870 F.3d at 481. Here, Janes directed Franke to walk to his cruiser. [DE 28 at 23:23:14]. Franke was considerably agitated. He soon stopped walking, shouted towards his relatives, and struggled against Janes's guidance towards the cruiser. [*Id.* at 23:23:28]. When Janes lifted Franke's arm, Franke responded with, "Get off of me, quit doing that!" [*Id.* at 23:23:42]. Janes repeatedly ordered Franke to stop pulling away from him. [*Id.*]. In *Siders v. City of Eastpointe*, a suspect's "combative attitude, shouts and statements, and attempt to close herself" inside a vehicle gave an officer "a reasonable basis to suspect that she might pose a safety threat." 819 F. App'x 381, 389 (6th Cir. 2020). In *Bolden v. City of Euclid*, an officer "was justified in using some force" under *Graham*'s second factor when a suspect, despite "not pos[ing] an obvious threat of danger," disregarded the officer's commands. 595 F. App'x 464, 470 (6th Cir. 2014). Similarly, a reasonable officer could believe that Franke posed a threat when he was verbally and physically combative and appeared to be uncooperative with Janes's commands during the walk to Janes's cruiser. *See Farris*, 96 F.4th at 966.

Citing *Coley v. Lucas County, Ohio*, 799 F.3d 530 (6th Cir. 2015), Franke argues that "movement alone while restrained cannot constitute a threat." [DE 32 at 378]. But in *Coley*, the Sixth Circuit was simply restating a complaint's allegation. *See* 799 F.3d at 534–35 ("According

9

to the operative complaint," the plaintiff "was 'restrained and not posing any threat.'"). Furthermore, while that plaintiff was thoroughly shackled inside a jail cell, *id.* at 535, Franke was merely handcuffed in a public parking lot. Officers were trying to isolate Franke and control the scene, but Franke was trying to keep his relatives, who were also agitated with police, involved in his detention. [DE 28 at 23:23:14]. The record shows that a reasonable officer would have perceived Franke as posing some degree of threat. *See Farris*, 96 F.4th at 965. Therefore, weighing a reasonable "officer's reasons for the force against an arrestee's interest in avoiding it," this *Graham* factor weighs in Janes's favor. *See Chaney-Snell*, 98 F.4th at 715–16.

### 3.  *Whether Franke Resisted or Attempted to Flee*

Under the third *Graham* factor, courts consider whether the suspect "was actively resisting arrest." *Roell*, 870 F.3d at 482. Active resistance is "noncompliance" coupled with "some outward manifestation" of "volitional and conscious defiance." *Kent v. Oakland Cnty.*, 810 F.3d 384, 392 (6th Cir. 2016) (quoting *Eldridge v. City of Warren*, 533 F. App'x 529, 534 (6th Cir. 2013)). Such defiance can manifest in "physical force, a show of force, or verbal hostility." *King v. City of Rockford, Michigan*, 97 F.4th 379, 395 (6th Cir. 2024) (quoting *Jackson v. Washtenaw Cnty.*, 678 F. App'x 302, 306 (6th Cir. 2017)). "[O]fficers cannot be held liable solely because they created the circumstances requiring the application of force." *Roell*, 870 F.3d at 482. Here, Franke appears to concede some level of noncompliance, albeit "*after* [Janes] forced his arms over his head." [DE 32 at 379 (emphasis in original)]. But the parties dispute whether Franke outwardly defied Janes's instructions. *See Kent*, 810 F.3d at 392.

Janes first asserts that Franke was verbally hostile. [DE 26-1 at 80]. Franke responds that curses and insults do not equal hostility. [DE 32 at 380]. It is not entirely clear "what type or level" of verbal hostility will justify force. *Shanaberg v. Licking Cnty., Ohio*, 936 F.3d 453, 459 (6th Cir. 2019) (Nalbandian, J., concurring in the judgment). However, merely vulgar language does not.

10

*See Pershell v. Cook*, 430 F. App'x 410, 415 (6th Cir. 2011); *see also Degolia v. Kenton Cnty.*, 381 F. Supp. 3d 740, 763 (E.D. Ky. 2019). Franke's words were vulgar but not "overtly threatening." *See Shumate v. City of Adrian, Michigan*, 44 F.4th 427, 448 (6th Cir. 2022). They did not constitute "volitional and conscious defiance." *See Kent*, 810 F.3d at 392.

Janes also asserts, quoting *Eldridge*, 533 F. App'x at 535, that Franke committed a "deliberate act of defiance." [DE 26-1 at 80]. The record shows that, during the walk to the police cruiser, Franke paused and separated his body from Janes's to yell towards his family. [DE 28 at 23:23:14]. Janes responded by lifting Franke's left arm behind him and instructing him to "go." [*Id.* at 23:23:36]. Then Janes repeatedly instructed Franke to stop pulling away from him. [*Id.* at 23:23:42]. Franke denied pulling away at the time [*id.* at 23:23:42], but after calming down, he apologized for his conduct multiple times. [*Id.* at 23:28:20, 23:30:35, 00:23:48].

Franke argues that even if he "did make a small movement away" from Janes, that would not constitute "active resistance." [DE 32 at 380]. He points to *McCaig v. Raber,* 515 F. App'x 551 (6th Cir. 2013). [DE 32 at 380]. There, the Sixth Circuit found that a noncompliant suspect who "jerked away" from an officer was not actively resisting. 515 F. App'x at 555. But that suspect's action was reflexive—he jerked away when the officer "screamed loudly in his ear." *Id.* Here, Janes did nothing similar that could have caused Franke to reflexively pull away from him. "Active resistance includes 'physically struggling with . . . or disobeying officers.'" *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015) (quoting *Cockrell v. City of Cincinnati,* 468 F. App'x 491, 495 (6th Cir. 2012)). While Franke's resistance in this case might have been slight, there is no "*de minimis* resistance exception in[] the Fourth Amendment." *Rudlaff*, 791 F.3d at 643. The video evidence shows that Franke engaged in at least some physical defiance of Janes's instructions moving him toward his cruiser. *See King*, 97 F.4th at 395. Weighing a reasonable

11

"officer's reasons for the force against an arrestee's interest in avoiding it," this *Graham* factor weighs at least slightly in Janes's favor. *See Chaney-Snell*, 98 F.4th at 715–16.

\* \* \*

In sum, when Janes used force, he suspected Franke of two criminal acts involving the use of physical violence: abusing Gardner, then fighting a man in the parking lot. Based on the totality of the circumstances in the parking lot, with numerous people loitering around, family members and the victim present and upset, and the obvious agitated state of Franke, a reasonable officer would also believe that Franke posed a potential threat to both Janes and others in the parking lot. Further, Franke's active resistance by pulling away from Janes during the walk towards the cruiser would have been considered by a reasonable officer. Janes's use of force must be evaluated in the context of these circumstances. *See Roell*, 870 F.3d at 482 (quoting *Garner*, 471 U.S. at 8–9).

Notably, the degree of force that Janes employed was minor. *See LaPlante*, 30 F.4th at 579. In Franke's words, Janes put him in a "half nelson" and "shove[d] him forward," then grabbed his wrist and "torque[d] it" to press him against the cruiser. [DE 26-2 at 98]. This lasted roughly 30 seconds. [*See* DE 28 at 23:23:36]. While Franke complained of pain during the walk to Janes's cruiser, he did not while up against the cruiser. [*Id.* at 23:23:42, 23:24:04]. Furthermore, assuming *arguendo* that Janes's actions caused Franke's wrist injury, the fact that Franke experienced harm does not necessarily mean that Janes used excessive force. *Cf. Naji v. City of Dearborn, Michigan*, 120 F.4th 520, 523–24 (6th Cir. 2024) (affirming summary judgment despite suspect's death). Janes initially approached, engaged, cuffed, and guided Franke without incident. [DE 28 at 23:22:09]. Franke acknowledges that Janes's use of force was "respon[sive]" to his own conduct. [DE 32 at 367]. "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at

12

396. "Not every push or shove . . . violates the Fourth Amendment." *Id.* (quotation marks omitted). Even reading the record in the light most favorable to Franke, no reasonable jury could conclude that Janes's use of force was "gratuitous." *See Chaney-Snell*, 98 F.4th at 715. Accordingly, Franke's excessive-force claim is dismissed as a matter of law.

### B. Qualified Immunity

"Qualified immunity . . . protects public officials, in certain circumstances, from liability for civil damages . . . ." *Barton v. Neeley*, 114 F.4th 581, 587 (6th Cir. 2024) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). This affirmative defense "is distinct from the merits of the plaintiff's claims." *Chaney-Snell*, 98 F.4th at 708 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 527–28 (1985)). Janes invokes qualified immunity here. [DE 26-1 at 68]. To overcome it, Franke must show both (1) that Janes violated his Fourth Amendment rights and (2) that the violation was "clearly established" by law at the time of Janes's actions. *Chaney-Snell*, 98 F.4th at 714. "If the answer to either question is 'no,' then [Janes] is entitled to qualified immunity." *See Finley v. Huss*, 102 F.4th 789, 804 (6th Cir. 2024) (citing *Ashcroft*, 563 U.S. at 735). Courts may address these questions in either order. *Id.*

The Sixth Circuit has established that officers may not use "additional gratuitous force" on a neutralized suspect. *Chaney-Snell*, 98 F.4th at 720. Therefore, Franke's rights at issue here were clearly established. *See Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021). However, as discussed above, those rights were not violated. There is no viable federal claim for which Janes could be liable. *See Chaney-Snell*, 98 F.4th at 714. On Franke's excessive-force claim, Janes is entitled to judgment as a matter of law.

### C. Negligence Claim

Janes challenges the viability of Franke's negligence claim. He argues that because his actions were indisputably intentional, they could not have been negligent. [DE 26-1 at 81]. Franke

13

only responds that "[h]is claims for negligence should . . . succeed as any reasonable officer knows that maliciously depriving someone of their rights is against the law." [DE 32 at 382].

Janes is correct. "There is no such thing as a negligent battery." *Woodcock v. City of Bowling Green, Kentucky*, 165 F. Supp. 3d 563, 605 (W.D. Ky. 2016), *rev'd on other grounds*, 679 F. App'x 419 (6th Cir. 2017). Kentucky courts recognize that "in a situation where a claim is made against an officer for excessive force, negligence is not an issue." *Downey v. Jaehnigen*, No. 2019-CA-0693-MR, 2021 WL 1583168, at *1 (Ky. App. Apr. 23, 2021). Consequently, "a negligence claim under Kentucky law cannot coexist with a Fourth Amendment excessive-force claim based on the same conduct." *Hall v. Braun*, 546 F. Supp. 3d 553, 564 (W.D. Ky. 2021), *aff'd sub nom. Kirilova v. Braun*, No. 21-5649, 2022 WL 247751 (6th Cir. Jan. 27, 2022). "If a plaintiff's battery theory fails because the officer used reasonable force, then the law of negligence does not offer a fallback tort based on those same intentional actions." *Id.*; *see also Napper v. Hankison*, 617 F. Supp. 3d 703, 753 (W.D. Ky. 2022). Accordingly, Franke's negligence claim is dismissed as a matter of law.

### D. State-Law Immunity

Kentucky provides its "public officers and employees" with "qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). This immunity covers intentional tort claims and negligence claims alike. *Gati v. W. Kentucky Univ.*, 762 F. App'x 246, 253 (6th Cir. 2019) (quoting *Martin v. O'Daniel*, 507 S.W.3d 1, 6 (Ky. 2016)). It protects an officer's (1) "discretionary acts or functions" undertaken (2) "in good faith" and (3) "within the scope of [his] authority." *Browning v. Edmonson Cnty., Kentucky*, 18 F.4th 516, 530 (6th Cir. 2021) (quoting *Yanero*, 65 S.W.3d at 522).

An officer's use-of-force determination is a discretionary act. *Id.* at 530 (citing *Smith v. Norton Hosps., Inc.*, 488 S.W.3d 23, 31 (Ky. App. 2016)); *see also* Ky. Rev. Stat. § 503.090. It also falls within the scope of his authority. *Reich v. City of Elizabethtown, Kentucky*, 945 F.3d 968, 983 (6th Cir. 2019); *see also Browning*, 18 F.4th at 530. This leaves only the question of good faith. *See Reich*, 945 F.3d at 983. A plaintiff may show bad faith in either of two ways. The first, which resembles federal qualified-immunity analysis, is objective: a rights violation—excessive force, for example—demonstrates bad faith. *Browning*, 18 F.4th at 530–31 (citing *Yanero*, 65 S.W.3d at 523). The second is subjective: "if the officer . . . willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive," that too demonstrates bad faith. *Yanero*, 65 S.W.3d at 523; *see also Bryant v. Pulaski Cnty. Det. Ctr.*, 330 S.W.3d 461, 466 (Ky. 2011).

Janes argues that he used reasonable force and, therefore, acted in good faith. [DE 26-1 at 81]. In response, Franke argues that "a reasonable jury could find that [Janes] maliciously used force against [him] as a means to inflict punishment for the assumed domestic violence." [DE 32 at 381]. Franke's argument under the subjective bad-faith approach does not cite or otherwise identify any evidence that would create a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). His "doubt as to the material facts," without something more, does not create a triable issue for a jury to decide. *See Matsushita*, 475 U.S. at 586. Furthermore, the record shows that if anything, Janes took steps to accommodate Franke, not punish him. Long before officers concluded that Franke had not abused Gardner, Janes twice attempted to ease Franke's pain and discomfort in his handcuffs. [DE 28 at 23:33:32, 23:47:58]. No reasonable jury could conclude that Janes acted in bad faith. He therefore is immune to Franke's state-law claims.

## IV. CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that Janes's motion for summary judgment [DE 26] is **GRANTED**. All remaining motions of record are **DENIED** as moot. The Court will enter separate judgment.

January 22, 2025

Rebecca Grady Jennings, District Judge
United States District Court